CARRIER ET AL. *v.* BRYANT.

No. 541. Argued March 27, 28, 1939.—Decided April 17, 1939.

*Mr. John W. Wood* for petitioners.

*Mr. Frederick D. Hamrick, Jr.,* with whom *Mr. Frederick D. Hamrick* was on the brief, for respondent.

MR. JUSTICE McREYNOLDS delivered the opinion of the Court.

The Supreme Court, North Carolina, ruled that negotiable notes and United States bonds purchased, and held as investments, for an incompetent World War veteran

by his guardian out of "payments of benefits" authorized under laws relating to such veterans, were subject to execution upon a judgment against the incompetent. Petitioners challenge that view and claim immunity under § 3 Act August 12, 1935 (c. 510, 49 Stat. 607, 609; 38 U. S. C. § 454a).

"Sec. 3. Payments of benefits due or to become due shall not be assignable, and such payments made to, or on account of, a beneficiary under any of the laws relating to veterans shall be exempt from taxation, shall be exempt from the claims of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary. Such provisions shall not attach to claims of the United States arising under such laws nor shall the exemption herein contained as to taxation extend to any property purchased in part or wholly out of such payments. Section 4747 of the Revised Statutes and section 22 of the World War Veterans' Act, 1924, are hereby repealed, and all other Acts inconsistent herewith are hereby modified accordingly. The provisions of this section shall not be construed to prohibit the assignment by any person, to whom converted insurance shall be payable under title III of the World War Veterans' Act, 1924, of his interest in such insurance to any other member of the permitted class of beneficiaries.

"Sec. 5. That this Act shall take effect and be in force from and after its passage, but the provisions hereof shall apply to payments made heretofore under any of the Acts mentioned herein."

The conclusion below is supported by *McCurry v. Peek*, (1936) 54 Ga. App. 341; 187 S. E. 854, the only other opinion squarely upon the point here involved which has been called to our attention.

The language of § 3, although not entirely felicitous, conflicts with the petitioners' insistence.

The first sentence grants exemption from taxation, claims of creditors, attachment, levy or seizure under any legal process whatever. The things exempted are "payments of benefits" due or to become due either before or after receipt by the beneficiary.

Investments purchased with money received in settlement of benefits are not such payments due or to become due. Accordingly, giving the words employed their ordinary meaning, the notes and bonds in question are not exempted by the first sentence in § 3. It left them, like other property, subject to taxation, claims of creditors, and legal process.

The second sentence in the section clearly recognizes the distinction between benefit payments and property purchased with money therefrom. It declares the exemption provisions in the first sentence shall not attach to claims of the United States; also that exemption from taxation shall not extend to property purchased out of benefit payments. Nothing is said concerning claims of creditors. Nevertheless, petitioners seem to maintain, immunity from these must be inferred. But a mere declaration that investments always subject to taxation shall not enjoy exemption therefrom affords no basis for holding them free from claims of creditors. Although the first sentence extended no immunity to investments, apparently out of abundant caution, the second declared them subject to taxation.

We find nothing in the history or supposed purpose of the enactment adequate to support a construction not in accord with the ordinary import of the words employed.

Under *Spicer* v. *Smith,* (1933) 288 U. S. 430, 434, payment of benefits to the guardian vested title in the ward. The exemptions of the statute would not be different if the ward had personally received the payments.

Section 4747 Revised Statutes, Act March 3, 1873 (38 U. S. C. § 54) remained in force until repealed by Act August 12, 1935. It provided—

"No sum of money due, or to become due, to any pensioner, shall be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, whether the same remains with the Pension-Office, or any officer or agent thereof, or is in course of transmission to the pensioner entitled thereto, but shall inure wholly to the benefit of such pensioner."

This section was considered in *McIntosh* v. *Aubrey,* (1902) 185 U. S. 122, 124, where it was unsuccessfully claimed that property purchased with pension money could not be seized under an execution. It was there said—

"The language of the section of itself seems to present no difficulty, and if doubt arises at all it is only on account of the decisions of courts whose opinions are always entitled to respect. . . . But notwithstanding, we think the purpose of Congress is clearly expressed. It is not that pension money shall be exempt from attachment in all of its situations and transmutations. It is only to be exempt in one situation, to wit, when 'due or to become due.' From that situation the pension money of plaintiff in error had departed."

Section 22 World War Veterans' Act, 1924, c. 320, 43 Stat. 607, 613 (38 U. S. C., § 454), repealed by Act August 4, 1935, provided—

"That the compensation, insurance, and maintenance and support allowance payable under Titles II, III, and IV, respectively, shall not be assignable; shall not be subject to the claims of creditors of any person to whom an award is made under Titles II, III, or IV; and shall be exempt from all taxation: *Provided,* That such compensation, insurance, and maintenance and support allowance shall be subject to any claims which the United States may have, under Titles II, III, IV, and V, against the person on whose account the compensation, insurance, or maintenance and support allowance is payable. . . ."

*Trotter* v. *Tennessee*, (1933) 290 U. S. 354, 356–357, construed this section. A veteran had purchased land in Tennessee with money received as compensation, and claimed exemption from taxation. We said—

"The moneys payable to this soldier were unquestionably exempt till they came into his hands or the hands of his guardian. *McIntosh* v. *Aubrey*, 185 U. S. 122. We leave the question open whether the exemption remained in force while they continued in those hands or on deposit in a bank. . . . Be that as it may, we think it very clear that there was an end to the exemption when they lost the quality of moneys and were converted into land and buildings. The statute speaks of 'compensation, insurance, and maintenance and support allowance payable' to the veteran, and declares that these shall be exempt. We see no token of a purpose to extend a like immunity to permanent investments or the fruits of business enterprises."

In 1935 Congress gave much consideration to the exemption which should be accorded to veterans. The outcome is shown by §§ 3 and 5, Act August 12, 1935, *ante,* p. 546.

Section 3 of that Act came under review in *Lawrence* v. *Shaw*, (1937) 300 U. S. 245, 249–250. Exemption was successfully claimed for bank deposits standing in the name of a veteran's guardian upon the view that such deposits, made in the ordinary course and subject to demand for the veteran's use, should be treated as if money in his hands.

"The World War Veterans' Act, 1924, provided that the compensation and insurance allowances should be 'exempt from all taxation.' The Act of 1935 is more specific, providing that the payments shall be exempt from taxation and shall not be liable to process 'either before or after receipt by the beneficiary.' There was added the qualification that the exemption should not extend 'to

any property purchased in part or wholly out of such payments.' This more detailed provision was substituted for that of the earlier Act and was expressly made applicable to payments theretofore made. We think it clear that the provision of the later Act was intended to clarify the former rather than to change its import and it was with that purpose that it was made retroactive. . . . The provision of the Act of 1935 that the exemption should not apply to property purchased out of the moneys received from the Government shows the intent to deny exemption to investments, as was ruled in the *Trotter* case."

The questioned judgment must be

*Affirmed.*