# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
April 10, 2000 Session

## WILLIAM EMORY FOX v. MARCELLA ANNE AMES FOX

**Appeal from the Chancery Court for Franklin County**
**No. 15,620     Jeffrey F. Stewart, Chancellor**

---

### No. M1999-01720-COA-R3-CV - Filed April 11, 2001

---

In this divorce case ending an eighteen year marriage, the trial court awarded as separate property only the items owned by each party at the time of the marriage. The court awarded the marital home to both parties as tenants in common, allowing Wife to retain possession while the children were minors but requiring her to make the mortgage payments. Upon the sale of the property, the parties were to divide the proceeds of the sale, after costs and encumbrances were paid, with Wife receiving 60% and Husband receiving 40%. Wife appeals, contending that the court was required to classify the gifts during the marriage as separate property, and that the court's distribution of the marital property was not equitable. She also argues that the trial court violated federal law by awarding Husband a percentage of the real property and by ordering her to pay the mortgage, claiming the source of the equity in the property and of her income is her disability benefits, and those funds are exempt from "attachment, levy, or seizure." The evidence does not preponderate against the court's classification of property, and we find the division to be equitable. We find no violation of federal law in the award of the real property or in the requirement that Wife pay the mortgage so long as she occupies the premises.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
### Affirmed and Remanded.

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and WILLIAM B. CAIN, J, joined.

Robert F. Hazard, Tullahoma, Tennessee, for the appellee, William Emory Fox.

Barbara G. Hardin, Decherd, Tennessee, for the appellant, Marcella Anne Ames Fox.

# MEMORANDUM OPINION[1]

William Emory Fox ("Husband") and Marcella Anne Ames Fox ("Wife") married in 1981 and have two children, a daughter born in 1983 and a son born in 1986. The parties met in field artillery school at Fort Sill, Oklahoma, while Wife was on active duty in the U.S. Army and Husband was in the National Guard. After the marriage, Husband took various jobs where Wife was stationed in order to remain with the family; Wife was the primary breadwinner. Wife was medically discharged[2] from the army in 1994, and at the time of the trial she received disability benefits from the Veteran's Administration ("VA") as her primary source of income. She also received VA vocational rehabilitation benefits, which provided her with tuition, books and a stipend while she pursued a master's degree in education from Tennessee State University. She expected to graduate in May, the following year.

Husband has a college degree, and was working two jobs, both related to computers, at the time of the trial. He also has a disability related to his military service, but he did not apply for disability benefits.

The parties purchased approximately thirty-three acres in Franklin County in 1994, after Wife left the army. They placed a Quonset hut on the property and began fixing the interior for use as the family home. Both parties worked on the residence, but after the separation, Wife remained there with the children and assumed responsibility for the improvements. Wife's parents gave the parties $5,000 toward the purchase of the land, Wife contributed $4,000 and closing costs, and Husband contributed almost $16,000 after cashing out an Individual Retirement Account. Wife made arrangements so that the mortgage payments were taken directly from her checking account. The parties did not have the land and home appraised prior to the trial; they owed almost $55,000 on the property and Husband believed it was worth about $94,000, while Wife claimed it was worth about $65,000. Neither party felt able to pay the other for his or her share of the equity unless the property were sold. Wife specifically stated that she wanted to remain on the property with the children and testified she would have to sell it and move to another state, where her parents lived, if she were ordered to pay the husband anything immediately.

The parties stipulated to grounds for divorce, and the court heard testimony regarding

---

[1]Tenn. R. App. P. 10 states:

> This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

[2]Wife suffered from Meniere's disease and fibromyalgia, degenerative in nature, both of which were in remission at the time of the hearing in this matter.

custody[3] of the children and the division of property. Most of the testimony at trial centered around the value of certain items of personal property, and which party owned which items. Some silver place settings were received at the time of the marriage; Husband contended they were wedding gifts, while Wife claimed they were gifts from her family to her. Husband had a large gun collection, some of which he owned before marriage, some of which had been gifts from Wife to Husband, although there was some disagreement as to how many and as to their value. Husband also testified that other people had given him guns and a miniature cannon. They also had other collections, such as David Winter cottages, Hummel figurines, and books. They testified that some of these items had been gifts from one spouse to the other and that they had purchased a number.

Prior to its ruling, the court was informed that the parties were "not all that far off" regarding a property agreement. The court took a recess so the parties could work out a settlement, but the attempt was unsuccessful. In dividing the couple's property, the court awarded each party his or her vehicle; awarded the parties' household furnishings and appliances to Wife; awarded the Wife the use of the tractor until she sold the farm, when the proceeds would be divided equally; ordered that an insurance policy maintained by Husband be cashed in and the proceeds applied to a marital debt, with any remaining debt to be divided equally. Regarding the real property, the court ordered:

> The marital residence and acreage owned by the parties shall henceforth be owned by [Husband and Wife] as tenants in common. [Wife] may continue to reside in this residence until the parties' youngest child attains the age of 18 years or graduates from high school with the class of which he is a member, whichever occurs last. [Wife], until this property is sold as provided herein, shall be responsible for and shall pay the monthly mortgage expense encumbering this residence, shall be responsible for and shall pay the monthly mortgage expense encumbering this residence, shall be responsible for payment of property taxes accrued for the year 1999 and thereafter, shall be responsible and pay for all routine maintenance expense, and payment of property casualty insurance with a minimum insurable value equal to the fair market value of all improvements to the property. Property taxes accrued for tax year 1998 shall be born equally by the parties. Major repair to the residence shall be paid jointly by the parties with [Wife] contributing 60% of said costs and [Husband] contributing 40% of said costs.

> This real property and the improvements thereon shall be sold when the parties' youngest child attains the age of 18 years and/or graduates high school with the class of which he is a member. . . . The net proceeds derived from the sale, i.e. gross sales price less the costs of sale and the then existing mortgage indebtedness, shall be divided between the parties with [Wife] receiving 60% of the net proceeds and [Husband] receiving 40% of the net proceeds. Neither party shall further encumber

---

[3]Custody was not a hotly disputed issue at trial, with the only real question being the husband's visitation schedule. The court granted a divorce to both parties on stipulated grounds, awarded custody of the children to Wife, with visitation to Husband, and ordered Husband to pay child support. No issue regarding the grant of divorce, custody, or visitation has been raised on appeal.

this real property without the prior written consent of the other party thereto.

The remainder of the personalty owned by either or both parties ranged from the gun and figurine collections, to prints mentioned only in passing but never valued, to a tent, shelving, camping equipment, cassette tapes, swords mentioned but not valued, and other miscellaneous items. Husband's list included 72 miscellaneous items, but he testified it was not complete. The record regarding this personalty is confusing. Husband offered a list of property which included a miscellaneous personalty category which he valued at $22,724.[4] Wife also introduced a list, but it is not clear if it includes only those items Husband wanted or all their property. The testimony did not clear up many issues regarding what property they actually had, how it was acquired, or its value. The parties' testimony about gifts is unclear, sometimes distinguishing between gifts from each other and gifts from third parties. Based upon the lack of clarity and specificity regarding the property, the court awarded each party, as separate property, those items each brought into the marriage, and specifically enumerated some of those. It also specifically awarded some pieces of marital property. Concerning the remainder of the personal property, the court ordered:

> All remaining items of personalty not specifically decreed to either party herein shall be divided by the parties as follows: the Court directs that the parties assemble or designate all other items of personalty and that they draw lots and that the party with the lowest number shall first choose one item of personalty, the other party thereafter shall choose the second item of personalty, and alternating thereafter until all remaining items have been selected. Items of personalty selected by each party shall become their sole property free from claims of the other. The Court instructs this division to be made in this manner in order to avoid further expense to the parties which would result from a court ordered sale or the cost of independent inventory and appraisal that would be necessary in order for the court to make further division of personalty.

Neither party on appeal challenges this method of distribution of the personalty, *per se*. Wife presents two issues: first, that the trial court's division of the property was inequitable, and, second, that the trial court violated federal law by awarding Husband 40% of the real property and by ordering that she pay the mortgage, because her sole source of income, and the source of some of the equity in the real property, is the disability benefits, and those funds cannot be "attached." Because this issue goes to the authority of the court to make its distribution of the major asset in the marital estate, we will deal with it first.

---

[4]This figure includes the guns he claims he acquired during the marriage which were not gifts, but we have excluded the insurance cash value and the household goods.

I.

It is not disputed that the land and residence are properly classified as marital property. Wife objects to the distribution of equity by the court, but also asserts that the trial court had no authority to award Husband part of the equity or to order her to pay the mortgage until the house is sold. We cannot avoid placing this argument in the context of Wife's testimony that she wanted to be able to remain living on the property, and that she could not immediately pay Husband for any equity without selling the property. We assume she intended to make mortgage payments in order to keep the house had she been awarded all the equity. At least, we assume the mortgagor intended that she make such payments.

Wife's argument that the trial court violated federal law by awarding Husband 40% of the equity in the real property at the time it is sold, and by ordering her to pay the mortgage should she choose to occupy the premises until the younger child is emancipated, is based on 38 U.S.C. § 5301(a) which states, in pertinent part:

> Payments of [veteran's disability] benefits due or to become due under any law administered by the Secretary shall not be assignable except to the extent specifically authorized by law, and such payments made to, or on account of, a beneficiary shall be exempt from taxation, shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary. The preceding sentence shall not apply to claims of the United States arising under such laws nor shall the exemption therein contained as to taxation extend to any property purchased in part or wholly out of such payments. . . .

Wife argues that, because the mortgage payments have been and will be made through her checking account, and because her "only guaranteed source of income" is her VA disability benefits, the court's order awarding Husband a portion of the equity in the property and ordering her to make the payments on the property is an unlawful "attachment" of her benefits. We disagree.

Wife's argument has two prongs which we shall address in turn. First, she argues that because the regular monthly payments on the real property have been made from her checking account, which is funded by her VA disability benefits, the property itself is not subject to "attachment, levy or seizure." This argument is simply not supported by case law.

The United States Supreme Court addressed a similar argument in *Carrier v. Bryant*, 306 U.S. 545, 59 S. Ct. 707 (1939). In *Carrier*, the Court confronted the question of whether the North Carolina Supreme Court had erred in ruling that negotiable notes and U.S. bonds purchased with "payments of [veteran's disability] benefits" were subject to execution upon a judgment against the veteran. The Court considered 38 U.S.C. § 454(a) [repealed], the precursor to the statute at issue, 38 U.S.C. § 5301(a), and which contained almost identical language. *Carrier*, 370 U.S. at 546, 59 S. Ct. at 707. First noting that the exemption applied only to "'payment of benefits' due or to become due," the Court found that the investments purchased with that money were not exempt. *Id.*,

5

370 U.S. at 547, 59 S. Ct. at 708. Turning to the second sentence of the statute, the Court observed that while Congress had exempted the veteran's benefits from taxation, it clearly had not exempted the property purchased with those benefits. *Id.* Then, discussing an earlier case in which a veteran had argued that because his veteran's benefits were exempt from taxation, the land purchased with those funds was also exempt from taxation, the Court said, "'The moneys payable to this soldier were unquestionably exempt till they came into his hands . . . we think it very clear that there was an end to the exemption when they lost the quality of moneys and were converted into land and buildings.'" *Id.*, 370 U.S. at 549, 59 S. Ct. at 709 (quoting *Trotter v. Tennessee*, 290 U.S. 354, 54 S. Ct. 138 (1933)). The Court upheld the North Carolina Supreme Court's judgment allowing execution on investments purchased with disability benefits.[5] *Id.*

Although Wife's disability benefits were exempt from "attachment, levy, or seizure," we conclude, as did the U.S. Supreme Court, "there was an end to the exemption when they lost the quality of moneys and were converted into land and buildings." We also note that courts in other states, when dividing property pursuant to a divorce, have held that property purchased with funds derived from disability benefits was subject to division. *See Bishoff v. Bishoff*, 987 S.W.2d 798, 800 (Ky. Ct. App. 1999) (disability benefits lost their exempt status when invested in the parties' residence); *Gray v. Gray*, 922 P.2d 615, 619 (Okla. 1996) (once husband converted his disability benefits to personal property by purchasing two vans and a motor home, the exempt status of those funds was lost); *Pfeil v. Pfeil*, 341 N.W.2d 699, 702-03 (Wis. Ct. App. 1983) (holding that a mortgage note and real property purchased with funds obtained through disability benefits were subject to division).

Wife's second argument, that the court may not order her to make the payments on the property, should she choose to remain, is also based on her theory that the court has "attached" her benefits. She contends that, in effect, the court awarded 40% of the mortgage payments to Husband. We cannot agree for two reasons. The trial court did not order that disability benefits be paid to the mortgage company; Wife is free to pay the mortgage with any funds which might be available to her.[6] Also, Wife is not required to retain the property. She is free to vacate the premises and sell the

---

[5] In a later case, *Porter v. Aetna Casualty and Surety Co.*, 370 U.S. 159, 82 S. Ct. 1231 (1962), when confronted with the question of whether bank accounts funded by disability benefits were subject to attachment, the Court distinguished between funds held in bank accounts and "readily available as needed for support and maintenance," and funds "converted into permanent investments." *Porter*, 370 U.S. at 162, 82 S. Ct. at 1233. The "readily available" funds were not subject to attachment by creditors while the "permanent investments" were. *Id.* The Court noted that Congress, by creating the exemption for benefits intended that veterans have money "readily available as needed for support and maintenance" of the veteran. *Id.*

[6] In cases somewhat related to this, the Tennessee Supreme Court and this court have held that veterans who waived retirement benefits in order to receive disability benefits must reimburse the former spouse for that portion of the waived retirement benefits which had been awarded to the former spouse at the divorce. We found no conflict with 38 U.S.C. § 5301(a) in those rulings. *See Johnson v. Johnson*, No. W1999-01232-SC-R11-CV, 2001 WL 173502 at *5 (Tenn. Feb. 23, 2001) (requiring former husband who received disability benefits to reimburse former wife for monies awarded to her at divorce, and stating, "On remand, the trial court shall give effect to its decree without dividing Mr. Johnson's disability pay."); *Hillyer v. Hillyer*, M1998-00942-COA-R3-CV, 2001 WL 242558 at *5 (Tenn. Ct. App. March 13, 2001) (interpreting *Johnson* "only as limiting the trial court's ability to order direct payments" from the

property at any time prior to the time her son turns eighteen and graduates from high school; the only requirement is that she maintain the property and make the payments while she is there. The order that Wife make mortgage payments while she occupies the property is not an unlawful attachment or division of her disability benefits.

II.

Wife also claims that the trial court's division of property was not equitable, because of her greater financial contribution to the marriage, and because of her greater need, due to her disability, even though her income, through her disability benefits and her educational stipend, exceeds that of Husband, who is also required to pay child support.

We agree with the statement in Husband's brief that he found it difficult to address this issue because Wife "generally complains as to the distribution of assets but does not provide specifics as to a proposed cure." The wife did not include in her brief a tabulation of marital or separate property as required by Tenn. Ct. App. R. 15. That rule provides:

> (a) In domestic relations appeals where the issues involve the amount or the disposition of the marital property, the appellant's brief shall contain in the statement of facts or in an appendix, an orderly tabulation of all marital property in a form substantially like the form attached hereto. All entries in the table as to value and to whom the property was awarded shall be accompanied by a citation to the record where the information may be found.
>
> (b) If the appeal involves issues about the separate property of either party or the allocation of the marital debts, the appellant's brief shall contain a separate table in the same form showing the pertinent information for that disputed issue.
>
> (c) If the appellee disagrees with the appellant's tabulation, the appellee's brief shall contain a tabulation in the same form showing the appellee's version of the facts.

| MARITAL PROPERTY | APPELLANT'S VALUE | APPELLEE'S VALUE | VALUE FOUND BY TRIAL COURT | PARTY TO WHOM PROP- ERTY AWARDED BY TRIAL COURT |
|---|---|---|---|---|
| 1. (Description) | $ (Citation to record) | $ (Citation to record) | $ (Citation to record) | Husband or Wife (Citation to record) |

---

Veteran's Administration); *Smith v. Smith*, No. M1998-00937-COA-R3-CV, 2001 WL 242562 at *5 (Tenn. Ct. App. March 13, 2001) (same).

7

One reason for the failure to include this type of table is because there is insufficient evidence in the record to compile such a table. As the trial court observed, the primary disputes herein were not over which party should receive certain items of personalty; rather they could not agree on the values, and "everybody wants to be sure they get their fair share."

The issues surrounding the Hummel figurines and the David Winter cottages, two of the collections involved, exemplify the problem faced by the trial court and by this court. Both Wife and Husband testified that some of the individual items in the collection were gifts from Husband to Wife and some were purchased by one or both parties during the marriage, and the wife stated "we collected a lot of things while we were in Germany." Husband estimated there were approximately 60 items in the Hummel collection and valued them at an average of $40 each. Wife testified there were only 25 Hummel figurines, but failed to estimate their value. She stated there were approximately 70 David Winter cottages, with a average value of $30 to $40 each.

In this appeal, the wife argues that all items, presumably including individual items in the collections, which were received by either party during the marriage as gifts should have been classified as separate property. The statutory definition of "separate property" includes "[p]roperty acquired by a spouse at any time by gift, bequest, devise or descent." Tenn. Code Ann. § 36-4-121(b)(2)(D). Thus, clearly gifts to one spouse are that person's separate property. Even gifts from one spouse to the other become the separate property of the receiving spouse. *Batson v. Batson*, 769 S.W.2d 849, 856 (Tenn. Ct. App. 1988).

The distinction in classification is important because only marital property is subject to distribution. Tenn. Code Ann. § 36-4-121(c). Thus, before dividing the marital estate in a divorce proceeding, the trial court must first classify the parties' property as either marital or separate property. Tenn. Code Ann. § 36-4-121(b). The trial court has wide discretion in classifying the parties' property, and its decision is entitled to great weight on appeal. *Dunlap v. Dunlap*, 996 S.W.2d 803, 814 (Tenn. Ct. App. 1998). Absent an error of law, the trial court's classification of property and its division of marital property will be reversed or modified only if the evidence preponderates against the court's decision. *Id., see also* Tenn. R. App. P. 13(d).

While the trial court's duty is to classify and value the parties' property and to equitably divide the marital property, the court cannot make these determinations on any basis other than the evidence presented by the parties. Therefore, it is incumbent upon the parties to present clear evidence sufficient to allow the court to identify the property owned, classify it, and establish a value for it. The court must, of course, decide any factual issues created by conflicting testimony. Wife appears to contend that the court should have classified every item the parties' possessed, even when the parties presented little or no proof regarding their complete holdings and the ownership thereof, and established a value for each item, even when it heard no evidence of value for most of the property.

The trial court herein ordered that all personalty not otherwise specifically awarded to one party was to be divided roughly equally. In making its ruling from the bench, the court stated:

I'm going to award each one of you the separate property that you've testified to . . . When I say separate property, I'm not considering what you call a gift as separate property. . . . You know, we can go back and argue about what's a gift and what's not a gift, but there were gifts both ways and some you agree on and some you don't; I can't tell the difference, so when I say separate property, I am defining that as the property that each of you carried into this marriage . . .

We interpret the trial court's determination as including a finding that neither party claiming specific property as a gift established such gift through proof. "In a divorce case, as in other cases, the burden of proving that a gift was made is on the donee or the party asserting the gift." *Dunlap*, 996 S.W.2d at 814 (citations omitted). Having carefully reviewed the testimony and exhibits in this record, we cannot say that the evidence preponderates against that finding. Therefore, we affirm the trial court's classification of the property not specifically excluded from its order as marital.

III.

Having affirmed the trial court's classification of property, we turn now to the distribution of marital property. This court has previously discussed the division or a couple's property at divorce as follows:

> Tennessee Code Annotated § 36-4-121(a) provides that marital property should be divided equitably without regard to fault. It gives a trial court wide discretion in adjusting and adjudicating the parties' rights and interests in all jointly owned property. Accordingly, a trial court's division of the marital estate is entitled to great weight on appeal and should be presumed to be proper unless the evidence preponderates otherwise.
>
> A trial court's division of marital property is to be guided by the factors contained in Tenn. Code Ann. § 36-4-121(c). However, an equitable property division is not necessarily an equal one. It is not achieved by a mechanical application of the statutory factors, but rather by considering and weighing the most relevant factors in light of the unique facts of the case.

*Batson*, 769 S.W.2d at 859 (citations omitted).

Wife, while generally claiming an inequitable distribution of the marital estate, appears to be primarily concerned with the court's distribution of the equity in the real property, and argues that Husband is not entitled to 40% of that equity. With regard to the couple's personal property, the trial court awarded each party the car he or she primarily used. It awarded Wife the household furnishings, noting that Husband was to get a few sheets and towels for his personal use. The remainder of the personal property was to be divided on a roughly equal basis, using an alternate selection basis. Although Wife has not specifically identified her concern with regard to the personal property, we presume that she is of the opinion that an equal distribution is not equitable in these circumstances. She also seems concerned that whatever items she gets actually add up to her

9

awarded percentage of the total to be distributed.

Tennessee Code Annotated § 36-4-121(c) lists the factors for the court to consider in making its distribution of marital property. Among those are the health and financial needs of the parties and the contributions of the parties to the marriage. Tenn. Code Ann. § 36-4-121(c). Wife contends that her disability and her greater contribution to the marriage entitle her to a greater share of the marital property than the court awarded her. We cannot agree. Husband contributed to the marriage in several ways: he contributed financially through his wages, by his work improving the property, and by caring for the children. He left several jobs in order to remain with the family when Wife was transferred. Further, Wife was working on a master's degree at the time of the hearing, so she has a higher level of education than Husband, and thus, a potentially greater ability to earn future income. We cannot find that the trial court abused its discretion by awarding Husband 40% of the proceeds once the real property is sold, and by awarding each party a nearly equal share of the marital property remaining after the individual awards.

## IV.

The trial court, by ordering the parties to make alternate selections, had the laudable goal of reducing the costs to the parties which would be involved in further litigation or valuation by appraisers. While the alternate selection method devised by the court is unusual, neither party has challenged that method, *per se*. Wife's objections are to the size of the marital estate and to the proportional distribution. Because neither party has raised the method of distribution, we do not consider it as an issue before us for review.

We affirm the award of the marital home to both parties as tenants in common, the award of the proceeds upon the sale of the property, 60% to Wife and 40% to Husband, and the order that Wife continue to make the mortgage payments until the property is sold. We also affirm the trial court's distribution of the remaining marital property, including an equal distribution of the personal property. This case is remanded to the trial court such further proceedings as may be necessary. Costs are taxed to the appellant, Marcella Anne Ames Fox, for which execution may issue if necessary.

_____
PATRICIA J. COTTRELL, JUDGE