ELECTRONIC CITATION: 2006 FED App. 0008P (6th Cir.)
File Name: 06b0008p.06

**BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| In re: SHAH M. ALAM and NUZHAT M. ALAM, | ) | |
| Debtors. | ) | |
| _____ | ) | |
| RICHARD A. BAUMGART, CHAPTER 7 TRUSTEE, | ) | No. 05-8091 |
| Plaintiff-Appellant, | ) | |
| v. | ) | |
| SHAH M. ALAM and NUZHAT M. ALAM, | ) | |
| Defendants-Appellees. | ) | |
| _____ | ) | |

Appeal from the United States Bankruptcy Court
for the Northern District of Ohio, at Cleveland
No. 04-20579

Argued: November 8, 2006

Decided and Filed: December 29, 2006

Before: AUG, GREGG, and SCOTT, Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

**ARGUED:** Richard A. Baumgart, DETTELBACH, SICHERMAN & BAUMGART, Cleveland, Ohio, for Appellant. Stephen D. Hobt, Cleveland, Ohio, for Appellees. **ON BRIEF:** Lisa A. Vardzel, DETTELBACH, SICHERMAN & BAUMGART, Cleveland, Ohio, for Appellant. Stephen D. Hobt, Cleveland, Ohio, for Appellees.

---

**OPINION**

---

J. VINCENT AUG, JR., Bankruptcy Appellate Panel Chief Judge. The chapter 7 trustee ("Appellant") appeals an order of the bankruptcy court overruling his objection to the debtors' claim of exemption. The bankruptcy court held that Shah M. Alam's investment funds originating from a settlement of litigation against his disability insurance carrier were exempt in their entirety. For the reasons set forth below, we affirm the bankruptcy court's decision insofar as it finds that the investment funds were exempt "benefits under policies of sickness and accident insurance" pursuant to Ohio Revised Code §§ 2329.66(A)(6)(e) and 3923.19. However, we reverse and remand for further proceedings the bankruptcy court's decision that the investment funds were exempt in their entirety.

## I. ISSUES ON APPEAL

The issues in this appeal are (1) whether the bankruptcy court correctly construed Ohio law in its determination that the exemption claim made by the debtors, Shah M. Alam and Nuzhat M. Alam ("Debtors") pursuant to Ohio Revised Code §§ 2329.66(A)(6)(e) and 3923.19 was proper and (2) whether the bankruptcy court made sufficient findings of facts to conclude that the investment funds were exempt in their entirety. Under the facts presented, this is a case of first impression.

## II. JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction to decide this appeal. The United States District Court for the Northern District of Ohio has authorized appeals to the Panel, and a final order of the bankruptcy court may be appealed as of right pursuant to 28 U.S.C. § 158(a)(1). For purposes of appeal, a final order "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989) (citations omitted). An order on an objection to a debtor's claim of exemption is a final order for purposes of appeal. *Wicheff v. Baumgart (In re Wicheff)*, 215 B.R. 839, 840 (B.A.P. 6th Cir. 1998).

Findings of fact are reviewed under the clearly erroneous standard. Fed. R. Bankr. P. 8013; Fed. R. Civ. P. 52(a). "If the bankruptcy court's factual findings are silent or ambiguous as to an outcome determinative factual question, the [reviewing court] may not engage in its own factfinding but, instead, must remand the case to the bankruptcy court for the necessary factual determination." *Helfrich v. Thompson (In re Thompson)*, 262 B.R. 407, 408 (B.A.P. 6th Cir. 2001) (internal quotations and citations omitted).

A bankruptcy court's conclusions of law are reviewed de novo. *Adell v. John Richards Homes Bldg. Co. (In re John Richards Homes Bldg. Co.)*, 439 F.3d 248, 254 (6th Cir. 2006); *In re Downs*, 103 F.3d 472, 476-77 (6th Cir. 1996). "De novo review means that the appellate court determines the law independently of the trial court's determination." *Treinish v. Norwest Bank Minn., N.A. (In re Periandri)*, 266 B.R. 651, 653 (B.A.P. 6th Cir. 2001).

### III.  FACTS

Co-debtor Shah Alam was employed as a mechanical engineer for twenty years with Chemstress Consultant Company. Through his employment, he was offered a voluntary long term disability policy with Continental Casualty Company ("CNA"). The policy provided for approximately sixty percent of Mr. Alam's take-home income from the date of disability until he reached the age of sixty-five. In the late 1990s, Mr. Alam began suffering from severe back problems which led to surgery and ultimately a diagnosis of multiple sclerosis.

In 1999, Mr. Alam applied for disability benefits under the CNA policy. He was approved and received benefits of $3,432.00 per month until January 2001. Mr. Alam also was determined to be totally disabled by the Social Security Administration and receives monthly benefits of $1,599.00. In January 2001, CNA determined that he was, in fact, not disabled and terminated his benefits under the policy.

In August 2002, Mr. Alam brought an Employee Retirement Income Security Act ("ERISA") action against CNA in the United States District Court for the Northern District of Ohio seeking reinstatement of his benefits under the policy. Mr. Alam settled his action against CNA in May 2003. In exchange for a complete release of CNA, he received gross settlement proceeds in the amount of $115,000.00. After deduction of attorney's fees and costs, Mr. Alam received the net

amount of $77,022.32. The Debtors subsequently invested those funds in a series of bank accounts, money market accounts, and mutual funds by frequently closing out accounts, withdrawing the funds and opening new accounts.

On August 17, 2004, the Debtors filed their chapter 7 petition. On February 20, 2005, they amended their schedules and claimed an exemption in four Fidelity mutual fund accounts valued at $55,456.99 (the amount remaining from the original settlement of Mr. Alam's disability insurance claim at that time) pursuant to Ohio Revised Code §§ 2329.66(A)(6)(e) and 3923.19, which allow for exemptions of benefits paid under a policy of sickness and accident insurance. The Appellant trustee timely objected to the claim of exemption. He asserted that the funds were not benefits paid under a policy of sickness and accident, nor a lump sum payment because of dismemberment or other loss incurred, because the funds were received as a settlement of Mr. Alam's ERISA suit. The Appellant further asserted that the funds were not "benefits" because the settlement monies had been deposited into a joint account and subsequently invested by the Debtors. Lastly, the Appellant trustee argued that if the funds are found to be exempt, they are not exempt in their entirety.

On March 30, 2005, the Debtors sold all of their mutual funds and received $48,925.00. The $48,925.00 is now being held on the Debtors' behalf by their attorney. The parties stipulated that the funds were derived solely from settlement of the litigation against the disability insurance carrier and that no other monies were commingled with those funds. They further stipulated that Mr. Alam exercised complete and exclusive control over the funds and their investments.

The Debtors asserted that the settlement funds received as a result of the lawsuit against Mr. Alam's disability insurer qualify as benefits paid under a policy of sickness and accident insurance. Additionally, because the funds in the Fidelity accounts could be traced to the funds from the disability carrier, the Debtors assert they retained their exempt status.

After reviewing the record and the parties' joint stipulations, the bankruptcy court issued a Memorandum of Opinion and Order on December 7, 2005. The court agreed with the Debtors' characterization of the insurance proceeds received by Mr. Alam and held:

> Debtors contend that the lawsuit settlement award is akin to benefits
> being paid under a policy of sickness and accident insurance and the
> proceeds used to purchase the Fidelity Account were such funds and

were not commingled with other property of the Debtor. It is clear from the stipulated facts that, although the funds went through a series of investments there is no indication that the residual amount is nothing more than the remnant of the original net proceeds. Further, as Joint Stipulation number 3 indicates, these funds came from Debtor's disability carrier. Since the funds could be traced to the disability proceeds, the debtor is properly able to exempt them pursuant to the aforesaid exemption provisions.

(J.A. at 122-23.)

## IV. DISCUSSION

The Debtors' bankruptcy estate consists of their legal and equitable interests in all property. *See* 11 U.S.C. § 541(a)(1). The debtors are permitted to exempt certain property from the estate. An exemption withdraws an interest from the bankruptcy estate, and consequently from the creditors, for the benefit of the debtors. *Wicheff v. Baumgart* (*In re Wicheff*), 215 B.R. 839, 842 (B.A.P. 6th Cir. 1998). A state can choose whether its residents may use the available federal exemptions set forth in 11 U.S.C. § 522, or use its own state exemptions. *See* 11 U.S.C. § 522(b). Ohio has elected to opt-out of the federal exemptions and create its own set of bankruptcy exemptions. *See* Ohio Rev. Code § 2329.66. The burden is on the trustee to establish by a preponderance of the evidence that the exemption should not be allowed. *Hamo v. Wilson (In re Hamo)*, 233 B.R. 718, 723 (B.A.P. 6th Cir. 1999). The facts and circumstances of each case must be analyzed on their own. *Id.*

The exemptions at issue in this appeal are Ohio Revised Code §§ 2329.66(A)(6)(e) and 3923.19. Section 2329.66(A)(6)(e) provides:

> (A) Every person who is domiciled in this state may hold property exempt from execution, garnishment, attachment, or sale to satisfy a judgment or order, as follows:
>
>  . . .
>
>  (6)(e) The person's interest in the portion of benefits under policies of sickness and accident insurance and in lump sum payments for dismemberment and other losses insured under those policies, as exempted by section 3923.19 of the Revised Code.

Ohio Revised Code § 3923.19 provides:

> The portion of any benefits under all policies of sickness and accident insurance as does not exceed six hundred dollars for each

month during any period of disability covered by the policies, is not liable to attachment or other process, or to be taken, appropriated, or applied by any legal or equitable process or by operation of law, either before or after payment of the benefits, to pay any liabilities of the person insured under any such policy. . . . When a policy provides for a lump sum payment because of a dismemberment or other loss insured, the payment is exempt from execution by the insured's creditors.

This case is apparently one of first impression. Neither the parties nor the bankruptcy court cited any cases interpreting this particular exemption. Ohio courts have not addressed the issue of whether funds from a settlement with a long term disability insurer qualify as benefits under a policy of sickness and accident, or whether such a settlement constitutes a lump sum for dismemberment and other losses under Ohio Revised Code § 2329.66(A)(6)(e). In the absence of state law interpreting the statute, we must decide how an Ohio court would resolve the issue. *In re McCashen*, 339 B.R. 907, 910 (Bankr. N.D. Ohio 2006); *see also Burns v. Kinzer*, 161 F.2d 806 (6th Cir. 1947). When a federal court needs to resolve an undecided question of state law, the federal court must make the "'best prediction, even in the absence of direct state precedent, of what the [state] Supreme Court would do if it were confronted with [the] question.'" *Combs, II v. Int'l Ins. Co.*, 354 F.3d 568, 577 (6th Cir. 2004) (quoting *Managed Health Care Assocs., Inc. v. Kethan*, 209 F.3d 923, 927 (6th Cir. 2000)). In doing so, the court "may rely upon analogous cases and relevant dicta in the decisional law of the State's highest court, opinions of the State's intermediate appellate courts to the extent that they are persuasive indicia of State Supreme Court direction, and persuasive opinions from other jurisdictions . . . ." *Welsh v. U.S.*, 844 F.2d 1239, 1245 (6th Cir. 1988).

Ohio courts follow the rule that exemption statutes are to be construed liberally in favor of the debtor and any doubt in interpretation should be in favor of granting the exemption. *See, e.g.*, *Daugherty v. Cent. Trust Co. of Northeastern Ohio, N.A.*, 504 N.E.2d 1100, 1104 (Ohio 1986) ("[W]e acknowledge the liberal construction of exemption statutes afforded by the courts of this state . . . ."); *Dennis v. Smith*, 180 N.E. 638, 640 (Ohio 1932) ("'Laws exempting property of a debtor from execution are to be construed liberally in his favor. A statutory provision in the nature of an exception to the general law on the subject of exemptions should be given a strict construction.'" (citation omitted)); *In re Oglesby*, 333 B.R. 788, 791 (Bankr. S.D. Ohio 2005) ("'Ohio exemption provisions are to be construed liberally in favor of the debtor and a debtor's dependents and any

doubt in interpretation should be in favor of granting the exemption.'") (quoting *In re Lewis*, 327 B.R. 645, 648 (Bankr. S.D. Ohio 2005)); *In re Wycuff*, 332 B.R. 297, 300 (Bankr. N.D. Ohio 2005) (construing exemption statute liberally is necessary "to effectuate [the statute's] remedial purpose: affording the debtor life's basic necessities").

The issues presented by this appeal essentially have three parts: (1) do the funds from settlement of litigation against a disability insurance carrier qualify as benefits under a policy of sickness and accident insurance pursuant to Ohio Revised Code § 2329.66(A)(6)(e); (2) if so, do the funds retain their exempt status once received and invested; and (3) if the answer to the first two parts is in the affirmative, are the funds exempt in their entirety?

1. Do the settlement funds qualify as benefits under a policy of sickness and accident insurance pursuant to Ohio Revised Code § 2329.66(A)(6)(e)?

In keeping with the general rule of liberally interpreting Ohio exemption statutes, courts have held that where there is doubt as to the intent of a statute, the interpretation should be construed in favor of the debtor. *In re Simon*, 71 B.R. 65, 66 (Bankr. N.D. Ohio 1987) (citing *In re Everhart*, 11 B.R. 770 (Bankr. N.D. Ohio 1981)). Because the Ohio exemption statute is substantially similar to the corresponding federal Bankruptcy Code provisions, *see* 11 U.S.C. § 522(d)(10), and there is no Ohio case law, nor Ohio legislative history addressing the issue, we may look to the intent of Congress in adopting the similar exemption. *Id*. We may then logically infer the intent of the Ohio State Legislature in adopting the similar exemption. *Id*. (citing *In re Philips*, 45 B.R. 529, 531 (Bankr. N.D. Ohio 1984) and *Matter of Osburn*, 56 B.R. 867, 875 (Bankr. S.D. Ohio 1986)). The legislative history to 11 U.S.C. § 522(d)(10) indicates that the provision "exempts certain benefits that are akin to future earnings of the debtor." H.R. Rep. No. 95-595, at 362 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 5963, 6318.

The Appellant trustee urges this Panel to read the exemption statute in question as excluding litigation settlement funds. However, such limitation is not required under the language of the statute, which simply exempts a debtor's "interest in the portion of benefits . . . and in lump sum payments . . . under those policies." Nor does the legislative history state, or imply, an intention to exclude settlement funds paid from a disability insurance carrier. There is no logical or apparent statutory basis why a lump sum settlement payment as a result of a lawsuit against a disability

insurance carrier should not qualify as benefits paid under a policy of sickness and accident insurance. A disability benefit is not divested of its character as a payment in the nature of future earnings simply because it was received as a settlement of litigation against a disability insurer.

Finding that a lump sum settlement of a debtor's suit against a disability insurer qualifies as benefits paid under a policy of sickness and accident insurance "is in conformance with the basic maxim of Ohio exemption law which provides that exemptions are to be liberally construed so as to maximize their availability to debtors." *In re Feasel, II*, 277 B.R. 335, 338 (Bankr. N.D. Ohio 2001) (citing, *inter alia, In re Brown*, 133 B.R. 860, 861 (Bankr. N.D. Ohio 1991)). But for the disability policy, a policy of sickness and accident insurance, Mr. Alam would not have filed his ERISA claim against CNA, and CNA would not have agreed to a settlement.[1] Therefore, the first part of the inquiry should be answered in the affirmative.

2. Did the settlement funds retain their exempt status once received and invested?

The United States Supreme Court has addressed similar issues in several cases. In *Porter v. Aetna Cas. & Surety Co.*, 370 U.S. 159, 82 S. Ct. 1231 (1962), the issue was whether benefits paid by the United States Veterans' Administration retain their exempt status after being deposited in an account in a federal savings and loan association. Holding that the funds do retain their exempt status, the Court stated:

> Since legislation of this type should be liberally construed . . . we feel that deposits such as are involved here should remain inviolate. The Congress, we believe, intended that veterans in the safekeeping of their benefits should be able to utilize those normal modes adopted by the community for that purpose-provided the benefit funds, regardless of the technicalities of title and other formalities, are readily available as needed for support and maintenance, actually retain the qualities of moneys, and have not been converted into permanent investments.

*Porter*, 370 U.S. at 162.

---

[1] We by no means intend to imply that by settling the claims of Mr. Alam that CNA admitted any liability under the policy.

The Supreme Court specifically noted that the district court found that withdrawals from the accounts in question could be made as quickly as those from a checking account and that the integrity of the deposits was assured by federal supervision of the associations and by federal insurance of the accounts. Under those conditions, the funds were subject to immediate and certain access. *Id.* at 161-62. In finding that the funds were not permanent investments, the Court noted that they were not of a speculative nature and were not time deposits at interest. *Id*. at 162.

In his concurrence, Justice Douglas reviewed the history of the test of exemption under the Veterans' Administration Act:

> Heretofore the test of exemption under this Act has been whether the funds had taken the form of 'permanent investments,' on the one hand (*Trotter v. Tennessee*, 290 U.S. 354, 357, 54 S. Ct. 138, 139, 78 L. Ed. 358), or on the other were 'subject to draft upon demand,' as in the case of checking accounts. *Lawrence v. Shaw*, 300 U.S. 245, 250, 57 S. Ct. 443, 445, 81 L. Ed. 623. Negotiable notes and United States bonds were held to be nonexempt in *Carrier v. Bryant*, 306 U.S. 545, 59 S. Ct. 707, 83 L. Ed. 976. Yet so far as we know, those notes and bonds may have had the same or a comparable degree of liquidity as the present share account in the federal savings and loan association enjoys. Today, however, we hold these accounts exempt. Stocks and bonds cannot, of course, be fractionalized and converted into cash in small amounts, such as may be done with savings accounts and checking accounts. But stocks and bonds may be so liquid as to be tantamount to cash in hand and therefore, serve, as well as any bank deposit, the needs of the veteran.

*Id.* at 162-63. Justice Douglas then concluded "[t]he true test seems to me to be liquidity-that is to say, whether or not the moneys are kept in a form in which they are usable, if need be, 'for the maintenance and support of the veteran' . . . ." *Id*. at 164 (citing *Lawrence v. Shaw,* 300 U.S. 245, 250, 57 S. Ct. 443, 445 (1937)).

In *Philpott v. Essex County Welfare Board*, 409 U.S. 413, 93 S. Ct. 590 (1972), the issue was whether a state welfare agency could reach exempt federal social security disability benefits funds which had been deposited in a bank account. Finding the issue analogous to that presented in *Porter*, the Court held that the funds were exempt because, as in *Porter*, they were readily accessible and retained the quality of moneys. *Id*. at 416.

The Ohio Supreme Court decided a similar issue in *Daugherty v. Central Trust Co. of Northeastern Ohio, N.A.*, 504 N.E. 2d 1100 (Ohio 1986). In *Daugherty*, the issue was whether statutorily exempt personal earnings retain their statutory exemption when deposited in a bank checking account. The court determined that the language of Ohio Revised Code § 2329.66(A), "Every person who is domiciled in this state may hold property exempt from execution, garnishment, attachment, or sale to satisfy a judgment or order . . . ." strongly indicates that exempted earnings are to remain exempt even after receipt. *Id*. at 1103. Having so determined, and citing *Porter* and *Philpott*, the Ohio Supreme Court held that statutorily exempt funds do not lose their exempt status when deposited in a personal checking account so long as the source of the exempt funds is known or reasonably traceable. *Id*. at 1103. To find otherwise would frustrate the legislature's purpose of exempting certain property from actions brought by creditors to protect funds intended primarily for maintenance and support of the debtor's family. *Id*. Additionally, the funds in question retained their exemption because they met the test set forth by the United States Supreme Court in *Porter* because they were readily available as needed for support and maintenance, retained their quality as moneys, and were not converted into permanent investments. *Id*. at 1103 n.3.

Appellant trustee argues that *Daugherty* is not parallel in its facts. It is, however, pertinent authority upon principle, as are *Porter* and *Philpott*. The parties agreed that the funds in the accounts in question were derived from the settlement of the lawsuit against CNA, and that no other funds were commingled in the accounts. Thus, as the bankruptcy court found, the funds are reasonably traceable to the disability proceeds. Furthermore, while not deposited in a typical checking or savings account, the various money market accounts and mutual funds in which the moneys were placed were readily available, retained their quality as moneys and were not converted into permanent investments. As Justice Douglas stated in *Philpott*, ultimately the test is liquidity. As the series of transactions stipulated to by the parties shows, the funds remained liquid. On the other hand, had the funds been converted into land or buildings, for example, they clearly would have lost their exempt status under this test. *See Carrier v. Bryant*, 306 U.S. 545, 549, 59 S. Ct. 707, 709 (1939). Based on the foregoing facts, and the Ohio Supreme Court's holding in *Daugherty*, we find that it is reasonable to anticipate that the Ohio Supreme Court would similarly find that the funds at issue here retained their exempt status when deposited into mutual fund accounts. Such a holding is once again "in conformance with the basic maxim of Ohio exemption law which provides that

exemptions are to be liberally construed so as to maximize their availability to debtors." *In re Feasel, II*, 277 B.R. at 338.

3. <u>Are the funds exempt in their entirety?</u>

The Appellant trustee asserts that if the proceeds of the settlement are exempt, they are exempt only to the extent of $600.00 per month pursuant to Ohio Revised Code § 3923.19. Ohio Revised Code § 3923.19 provides, in pertinent part: "The portion of any benefits under all policies of sickness and accident insurance as does not exceed six hundred dollars for each month . . . . When a policy provides for a lump sum payment . . . the payment is exempt from execution by the insured's creditors." The bankruptcy court held that the entire exemption was proper; however, its order does not reveal how it came to this conclusion. We may affirm the decision of the bankruptcy court if it is correct for any reason, including one not considered by the bankruptcy court. *Gibson v. Gibson (In re Gibson)*, 219 B.R. 195 (B.A.P. 6th Cir. 1988); *McDowell v. Krawchison*, 125 F.3d 954 (6th Cir. 1997).

A similar issue was addressed in *In re Feasel*, *II*, 277 B.R. 335, 338 (Bankr. N.D. Ohio 2001). In *Feasel*, the trustee also argued that even if the debtors were entitled to the exemption under Ohio Revised Code § 2329.66(A)(6)(e), it was limited to $600.00 per month pursuant to § 3923.19. The debtors, on the other hand, argued that the entire amount received from their insurance company was exempt. Even so, the court could not find any language in the policy at issue which called for a lump sum payment. Additionally, the parties in *Feasel* stipulated that the debtors received four incremental payments from their insurance company which "by their very nature [cannot] be considered a lump-sum payment as that term is used in O.R.C. § 3923.19." *Id*. (citing *Black's Law Dictionary* 949 (6th ed. 1990) (defining a lump-sum payment as a "single payment in contrast to installments"). As a result, the court agreed with the trustee that the exemption was limited to $600.00 per month. *Id.*

We were not provided with a complete copy of the disability policy in question. However, at oral argument, the parties agreed that the settlement was not a lump-sum payment made under the terms of the policy. As a result, the provision of § 3923.19 exempting a lump sum payment from the reach of creditors is not applicable to this appeal and could not have been used by the bankruptcy court in reaching its conclusion that the benefits were exempt in their entirety. Because the

bankruptcy court was silent with respect to the facts upon which it based this conclusion and we are not in a position to make such findings, we must remand this issue to the bankruptcy court for findings of fact upon which it based its determination that the full amount of the benefits was exempt. *See In re Thompson*, 262 B.R. 407.

## V.   CONCLUSION

For the foregoing reasons, the bankruptcy court's order overruling the Appellant trustee's objection to the Debtors' claim of exemption made pursuant to Ohio Revised Code § 2329.66(A)(6)(e) and § 3923.19 is AFFIRMED insofar as it finds that the settlement proceeds are entitled to exempt status but the order is REVERSED and REMANDED with respect to a calculation to be made under § 3923.19 as to the amount of the settlement proceeds that are exempt.