**Lillian Cecilia GRAY, Appellant/Plaintiff,**

**v.**

**Ivan Lee GRAY, Appellee/Defendant.**

No. 83612.

Supreme Court of Oklahoma.

July 16, 1996.

Diana G. Mueller, Oklahoma City, for Appellant/Plaintiff.

Gloria J. Moore and Bill E.D. Williams, Oklahoma City, for Appellee/Defendant.

## OPINION

WATT, Justice:

Two issues are presented in this divorce proceeding: (1) Whether property acquired during coverture and purchased with one party's veterans' disability benefits is the separate property of the veteran or may be considered as jointly-acquired property subject to division under 43 O.S.1991 § 121, and (2) whether an order awarding temporary support can be modified retroactively. We hold that although disability benefits are the separate property of the veteran, property purchased with those funds during coverture

may properly be considered jointly-acquired and divisible upon divorce. We also hold that a trial court has authority to retroactively modify a temporary support award at any time prior to or in conjunction with the entry of the final divorce decree. Accordingly, the judgment of the trial court is affirmed in part, reversed in part and remanded with instructions.

## SUMMARY OF FACTS AND PROCEDURAL HISTORY

When Lillian Gray, plaintiff, and Ivan Gray, defendant, married in 1969, defendant was a disabled Air Force veteran. During the course of their marriage, defendant became 100% disabled and was in that condition when plaintiff filed her petition for divorce in March of 1992. The parties have one child, who has reached the age of majority. At the time of the divorce, defendant received $5,147.00 net per month in disability benefits from the United States Veterans' Administration (now the Department of Veterans Affairs) and $482.00 net per month in disability benefits from the Social Security Administration. Plaintiff, who has 25 years experience as a technician with AT & T, earned a gross annual salary of $43,000.00 for the year preceding the divorce.

For the majority of their marriage, the couple maintained separate bank accounts and separately paid various household expenses. However, monies received by both parties were used for joint debt and to purchase certain property. During the marriage the parties purchased a home, personal property and several vehicles. The home was placed in joint tenancy. A 1979 Ford pickup, a 1977 motor home, a 1989 Ford one-ton van, and a 1991 Dodge mini van were all purchased with defendant's disability income and were titled in his name. The Veterans' Administration, at its own expense, added handicap equipment to each of those vehicles. A 1988 Dodge Dynasty purchased by plaintiff with her own funds was titled in her name. The home and all vehicles were used by both parties for family purposes.

The 1977 motor home was destroyed in a fire during the marriage. The defendant filed a lawsuit against his insurer for damage to the vehicle and for bad faith punitive damages. A judgment of $52,781.91 was awarded to defendant and paid to him in three checks: two in July of 1991 and the third in December of 1992. Although she was not a named party to the suit, plaintiff was married to defendant when the motor home was purchased, when it was damaged, when the suit was filed, and when judgment was rendered.

On April 23, 1992, Judge David N. Harbour entered an order awarding plaintiff $1,000.00 per month in temporary support and restraining both parties from disposing of any property acquired during the marriage. Included in the joint property subject to the order was approximately $41,000.00 in a bank account held by defendant. The court found those funds were traceable to the motor home judgment proceeds. In September of 1993, the defendant was jailed for contempt of court because he had failed to pay a portion of the temporary support and because he disposed of some $11,000.00 from the subject bank account. He was released from jail in mid-October contingent upon, among other things, replacing the $11,000.00 in the account. However, he was jailed again in December for failure to purge the original contempt. The record reveals that the defendant eventually became current in temporary support payments, having paid a total of $21,000.00 during the 21 months between the filing of the divorce action and the beginning of trial. The $11,000.00 was never restored to the bank account as directed by the trial court.

The trial was held on January 25 and 26, and March 16, 1994, before Judge Clinton D. Dennis. Judge Dennis held that, pursuant to 38 U.S.C. § 5301, any veterans' benefits paid to defendant "which are traceable and retained their original form are the Defendant's separate property. Any personal property or real property purchased with said sums and are traceable from the Veterans Benefit to the particular property is the Defendant's separate acquired property." The court found the following were traceable to defendant's veterans' benefits and awarded them to defendant as his separate proper-

ty: A bank account containing $14,310.00, which was the only remaining money traceable to defendant's lawsuit award; the 1991 Dodge van and the 1989 Ford van [1]; and all special handicap equipment furnished by the Veterans' Administration.

After noting that the plaintiff earned $43,000.00 in the previous year, the court held that she was not entitled to any future support alimony. The court further held that the plaintiff should not have been awarded temporary support, which the court mistakenly determined to be $23,000.00, rather than $21,000.00.[2] The court credited plaintiff with $14,000.00 of that amount as part of her property division. The remainder of the marital property awarded to plaintiff included her retirement benefits from AT & T (no value assigned), two small oil royalty interests (no value assigned), her AT & T stock (valued at $5,848.00), a 1989 Ford Mustang ($7,000.00)[3], the 1988 Dodge Dynasty ($2,500.00), the 1979 Ford pickup ($1,500.00), and a large portion of the personal property. The court valued plaintiff's share of the personal property at $28,325.00 based upon the valuations she assigned to those pieces of property.[4] The total amount of property devised to the plaintiff was valued by the trial court at $59,173.00.

The court awarded the defendant life insurance policies (valued at $18,404.00), personal property (using plaintiff's figures, val-

ued at $11,075.00 [5]), and the couples' home. The court determined the home and real property were worth $49,500.00, despite the parties' stipulation that the appraised value of the home was $52,500.00. The court then subtracted from the value of the house a "$12,000.00 lien." The record revealed that the defendant paid $12,000.00—pursuant to a court order issued by Judge Harbour in October of 1993—to repair the home's sewer line. There was no evidence of any lien. The marital property awarded to the defendant was valued by the court at $66,979.00. The trial court ordered each party to pay for its own attorneys fees. Plaintiff appealed.

The Court of Appeals ruled that property purchased with defendant's veterans' benefits during coverture was jointly-acquired property subject to division. The appellate court also reversed the trial court's retroactive modification of the temporary support order. This Court granted the defendant's petition for writ of certiorari on March 26, 1996.

## I.

## PROPERTY PURCHASED WITH VETERANS' DISABILITY BENEFITS DURING COVERTURE MAY PROPERLY BE CONSIDERED JOINTLY–ACQUIRED PROPERTY SUBJECT TO DIVISION UPON DIVORCE

 The powers of a trial court to divide property upon the dissolution of a mar-

---

1. Although the 1979 Ford pickup was also purchased entirely with disability benefits, the court apparently did not consider it to be the defendant's separately acquired property.

2. The defendant failed to make temporary support payments in February and March of 1994.

3. The record reveals that in February of 1993 the defendant co-signed a $6,500.00 loan with his brother for the purchase of the Mustang. When Judge Dennis announced his ruling, defense counsel informed the court that the car was titled in the brother's name. The judge declined to reopen the proceedings or to modify his decision. Although the loan appears to have been paid off in March of 1993, the record does not disclose who paid the note.

4. Both parties presented evidence regarding the value of jointly acquired personal property. The defendant's valuations were made by an expert appraiser. The plaintiff gave her own valuations of the property which were, in most instances,

dramatically higher than those given by the defense. For example: A 35" television was valued by the defense at $400.00, while the plaintiff valued it at $2,200.00; a set of curtains was valued by the defense at $60.00 and $650.00 by the plaintiff; a 60" television and receiver were valued at $1,000.00 by the defense and $4,850.00 by the plaintiff; a tractor and equipment were valued at $1,875.00 by the defense and $7,500.00 by the plaintiff; a Christmas tree and ornaments were valued at $20.00 by the defense and $500.00 by the plaintiff; a 5 horsepower air compressor was valued at $350.00 by the defense and $3,000.00 by the plaintiff.

The actual total of plaintiff's personal property as itemized by the trial court is $31,940.00. The court apparently erred in its calculations. According to the defense's assessed valuations of those same items, plaintiff received approximately $7,360.00 in personal property.

5. The defense's assessed valuations of those same items of personal property total approximately $3,315.00.

riage are set forth in 43 O.S. Supp.1992 § 121. In relevant part, § 121 provides:

> As to such property, whether real or personal, which has been acquired by the parties jointly during their marriage, whether the title thereto be in either or both of said parties, the court shall, ... make such division between the parties as may appear just and reasonable, by a division of the property in kind, or by setting the same apart to one of the parties, and requiring the other thereof to be paid such sum as may be just and proper to effect a fair and just division thereof.

The "jointly-acquired property" referred to in this section has been defined as that property which is accumulated by the joint industry of both spouses during the marriage. *Thielenhaus v. Thielenhaus*, 890 P.2d 925, 930 (Okla.1995). There is a rebuttable presumption that property acquired during the marriage is obtained by the joint efforts of husband and wife. *Manhart v. Manhart*, 725 P.2d 1234, 1240 (Okla.1986).

At issue in this case are the two vans and the motor home acquired during the marriage and paid for with the defendant's disability benefits. The trial court ruled that any property purchased with and traceable from the defendant's veterans' benefits is the defendant's separately acquired property. The court found that the two vans and the motor home judgment proceeds were traceable to the defendant's benefits and, therefore, specifically excluded them from the marital property division. The court did not base its decision upon a finding that the vehicles were not jointly-acquired property under § 121. Indeed, the record reveals that although many pieces of property were purchased with the separate funds of either the plaintiff or the defendant, all of the items bought during the marriage were acquired through the joint industry of the parties. Rather, the court erroneously determined that the three vehicles were *exempt* from equitable division pursuant to 38 U.S.C. § 5301. Section 5301 states in relevant part:

> (a) Payments of benefits due or to become due under any law administered by the Secretary [of Veterans Affairs] shall

not be assignable except to the extent specifically authorized by law, and such payments made to, or on account of, a beneficiary shall be exempt from taxation, shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary. The preceding sentence shall not apply to claims of the United States arising under such laws nor shall the exemption therein contained as to taxation extend to any property purchased in part or wholly out of such payments.

In *Porter v. Aetna Casualty and Surety Co.*, 370 U.S. 159, 82 S.Ct. 1231, 8 L.Ed.2d 407 (1962), the Supreme Court considered the circumstances under which benefits paid by the Veterans' Administration retain their exempt status under the statutory predecessor of § 5301(a).[6] The Court held that veterans' disability benefits are the separate property of the beneficiary, exempt from creditors' claims, attachment, levy or seizure, "provided the benefit funds ... are readily available as needed for support and maintenance, actually retain the qualities of moneys, and have not been converted into permanent investments." *Id.* 370 U.S. at 162, 82 S.Ct. at 1233. The Court noted that:

> The statutory language reads only that the exemption "as to taxation" shall not extend to property purchased with benefits. However, in *Carrier v. Bryant*, 306 U.S. 545, 59 S.Ct. 707, 83 L.Ed. 976 (1939), the Court held that benefits invested in property were also nonexempt from creditor actions, since they were not " 'payments of benefits' due or to become due" and thus did not fall within the initial immunizing language.

*Porter*, 370 U.S. at 161 n. 3, 82 S.Ct. at 1232 n. 3.

We recognize that the defendant's veterans' disability benefits were his own separate property. However, once he converted those benefits to personal property the exempt status of those funds was lost. Under the teachings of *Porter*, when the defendant applied his disability benefits toward the purchase of the two vans and the

---

**6.** At issue before the Supreme Court in *Porter* was 38 U.S.C. § 3101(a). That subsection has since been renumbered to § 5301(a). Pub.L.

102–40, Title IV, § 402(c)(1), 105 Stat. 239. With one minor exception, the relevant language of both provisions is identical.

motor home, those funds were no longer "readily available as needed for support and maintenance," they did not "actually retain the qualities of moneys," and they were "converted into permanent investments." Once spent, the funds were no longer "payments of benefits due or to become due" pursuant to *Carrier.*[7] Accordingly, the two vans and the motor home judgment proceeds[8] are subject to equitable division by the trial court.

 The trial court has wide latitude in determining what part of jointly-acquired property shall be awarded to each party. *Teel v. Teel,* 766 P.2d 994, 998 (Okla.1988); *Phillips v. Phillips,* 556 P.2d 607, 610 (Okla. 1976). However, all property acquired during marriage by the joint industry of the husband and wife must be fairly and equitably divided by the trial court. 43 O.S. Supp. 1992 § 121; *Thielenhaus,* 890 P.2d at 930. This is true regardless of how title to the property is held. 43 O.S. Supp.1992 § 121; *Manhart,* 725 P.2d at 1240. The marital estate need not necessarily be equally divided to be an equitable division because the words "just" and "reasonable" in § 121 are not synonymous with "equal." *Teel,* 766 P.2d at 997 n. 6. An appellate court will not disturb the trial court's property division absent a finding of abuse of discretion or a finding

that the decision is clearly contrary to the weight of the evidence. *Id.* at 998; *Kiddie v. Kiddie,* 563 P.2d 139, 140–41 (Okla.1977).

The trial court's property division in this case is clearly contrary to the weight of the evidence. As detailed above, the property division should have included the two vans and the motor home judgment proceeds. The trial court also erred in deducting $12,-000.00 from the value of the home as a "lien" because no such lien existed, and by including the 1989 Ford Mustang as part of the marital estate because there was no evidence to indicate the vehicle was owed by either party. We also find that the trial court erred in its valuations of the personal property items.[9] On remand, the trial court is directed to recalculate the property division consistent with the views expressed herein.

## II.

AN ORDER AWARDING TEMPORARY SUPPORT MAY BE MODIFIED RETROACTIVELY AT ANY TIME PRIOR TO OR IN CONJUNCTION WITH THE ENTRY OF THE DIVORCE DECREE

 Title 43 O.S. Supp.1992 § 110 authorizes trial courts to issue various temporary

---

7. The trial court in the case at bar found that all three vehicles were traceable to the defendant's veterans' disability benefits. The court apparently did not consider whether those assets could be traced to defendant's Social Security disability benefits. The Social Security Act, 42 U.S.C. § 407, contains limiting language comparable to that found in 38 U.S.C. § 5301. Section 407(a) states:

> The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

For reasons similar to those announced in *Porter* and *Carrier,* it appears that any property purchased with defendant's Social Security disability benefits would be treated the same as property purchased with his veterans' disability benefits. Social Security benefits that have been converted to property are not "moneys paid or payable" within the meaning of § 407(a).

8. At the time these proceedings began in April of 1992, the trial court determined that approxi-

mately $41,000.00 in the defendant's possession was traceable to the original $52,781.91 of judgment proceeds. Contrary to a court order, the defendant disposed of $11,000.00 of those funds during the pendency of trial. He also never restored that amount in contravention of several other court orders. The trial court did permit the defendant to spend $12,000.00 of those funds for sewer repairs to the couple's home. We hold that the judgment proceeds subject to equitable division is $41,000.00, less the $12,000.00 spent on sewer repairs, for a total of $29,000.00. The defendant should not be permitted to profit from his contemptuous disregard of court orders.

9. Plaintiff estimated that the total value of all personal property items was $53,565.00, compared to approximately $15,085.00 by the defendant's expert. The trial court ruled that several items, valued at $10,750.00 by the plaintiff and $4,225.00 by the defense, were included in the value of the real property. The plaintiff was awarded several items, valued by the court at $700.00, to which both parties had assigned no value. Three portable buildings, valued at $500.00 by the plaintiff and $185.00 by the defense, were not included in the trial court's division order.

orders, including orders for spousal support, after an action for divorce has been filed. Section 110 further provides:

(B) Temporary orders may be vacated or modified before final decree on a showing by either party of facts necessary for vacation or modification. Temporary orders terminate when the final judgment on all issues, except attorney fees and costs, is rendered or when the action is dismissed....

Pursuant to this statute, a trial court may modify a temporary support order at any time before entry of a final decree. It is only after the final decree has been entered that a court loses authority to modify a temporary order. Therefore, consistent with § 110, a court may modify a temporary order *in conjunction with* the issuance of a final decree.

This was the law in Oklahoma long before § 110(B) was enacted. The crux of § 110 was formerly contained in 12 O.S. § 1276. Section 1276 was renumbered to § 110 by Laws 1989, c. 333, § 1, eff. Nov. 1, 1989. However, § 1276 did not contain any reference as to when a divorce court could modify or vacate a temporary order. Notwithstanding, this Court held:

Obligations created by interlocutory orders pendente lite do not survive, but merge in, the final judgment. Unlike accrued unpaid installments under a decree or some final order, an arrearage due under the terms of an interlocutory order may be modified or extinguished retroactively.... In short, the divorce decree operate[s] effectively to extinguish all preexisting rights of the parties arising out of their former marital status.

*Johnson v. Johnson,* 674 P.2d 539, 543 (Okla. 1983) (footnotes omitted).

At the outset of litigation in this case, the trial court entered an order awarding temporary support to the plaintiff. After considering the extensive evidence produced at trial, including evidence of plaintiff's lengthy career and annual earnings, the court determined that plaintiff had been monetarily able to support herself during the pendency of trial. The court held that plaintiff should not have been awarded temporary support and, consistent with § 110, retroactively modified the temporary order accordingly.[10] We find no abuse of discretion. *See Brown v. Brown,* 150 Okla. 217, 1 P.2d 167, 168 (1931).

## CONCLUSION

Property purchased during marriage with veterans' disability benefits may be considered jointly-acquired property subject to equitable division upon divorce. The evidence here established that all property obtained by the parties during their marriage was acquired by joint industry. Thus, the two vans and the motor home judgment proceeds, although traceable to defendant's veterans' disability benefits, should have been included in the marital estate and subject to equitable division.

A trial court has authority, pursuant to 43 O.S. Supp.1992 § 110, to retroactively modify a temporary support order at any time prior to or in conjunction with the entry of a final divorce decree. Here, the court retroactively modified the temporary support order within with the final decree. Section 110 authorizes such action and we find no abuse of the trial court's discretion.

Certiorari previously granted. The opinion of the Court of Appeals is vacated. The judgment of the trial court is affirmed in part, reversed in part and remanded for further proceeding consistent with this opinion.

HODGES, LAVENDER, HARGRAVE and SUMMERS, JJ., concur.

ALMA WILSON, C.J., KAUGER, V.C.J., and SIMMS, J., concur in part, dissent in part.

OPALA, J., dissents from part I, concurs in part II.

---

**10.** Contrary to the ruling of the Court of Appeals, the trial court's decision to modify the order was not based upon any finding that defendant's disability benefits were exempt from consideration in determining support.