2010 OK CIV APP 130

In re the MARRIAGE of S.M. SAGER,
now Hicks, Petitioner/Appellee,

and

S.D. SAGER, Respondent/Appellant.

No. 107,038.

Court of Civil Appeals of Oklahoma,
Division No. 1.

Sept. 24, 2010.

Rehearing Denied Oct. 29, 2010.

David W. Cole, Tulsa, OK, for Petitioner/Appellee.

James C. Linger, Tulsa, OK, for Respondent/Appellant.

WM. C. HETHERINGTON, JR., Judge.

¶ 1 In post-decree contempt proceedings initiated by S.M. Sager, now Hicks (Ex-wife), against S.D. Sager (Ex-husband) for failure to comply with their consent decree of dissolution, Ex-husband seeks review of a trial court order finding him guilty of indirect contempt for failure to pay child support and other child-related expenses and sentencing him to 6 months incarceration subject to purge. Legal errors require we reverse the order and remand with instructions to dismiss it.

### STANDARD OF REVIEW

¶ 2 "In a contempt proceeding, questions of fact will not be reviewed." *Kerr v. Clary*, 2001 OK 90, ¶ 18, 37 P.3d 841, 845. As a result, we review only questions of law. *Cowan v. Cowan*, 2001 OK CIV APP 14, 19 P.3d 322; *Torres v. Torres*, 1998 OK CIV APP 18, 956 P.2d 166.

*FACTS*

¶ 3 During the parties' eleven year marriage, three children were born. After the petition for dissolution was filed March 1, 2006, the parties agreed to a joint legal custody and physical custody/time sharing plan, child support according to their respective percentage of gross income, a 50–50% split for other child-related expenses, and division of their property and debts. Ex-husband also agreed to pay 50% of Ex-wife's attorney fees and costs. The parties executed a joint custody plan and "Agreed Decree of Dissolution of Marriage," which was approved by the court and filed on November 9, 2006 (11/9/06 Agreed Decree).[1]

¶ 4 Two years later on May 19, 2008, Ex-wife filed an Application for Citation for Contempt (Contempt Application), claiming Ex-husband "willfully failed" to comply with the 11/9/06 Agreed Decree by failing to pay: (1) child support from April 2006 through February 2008 in the amount of $6,493.54 (with interest); (2) $3,860.00 for child care expenses; (3) $179.93 for the minor childrens' medical expenses; (4) $302.50 for their extracurricular activities; and (5) $3,340.17 for attorney fees, costs, and interest. She claimed his total debt through May of 2008 was $14,175.94. Ex-husband responded, denying all allegations and the claimed indebtedness. He later pled not guilty and waived his right to a jury trial.

¶ 5 A trial was held February 27, 2009, during which counsel for the parties and the Department of Human Services (DHS) participated, both parties testified, and numerous exhibits were admitted into evidence. After closing arguments, the trial court announced Ex-wife had carried her burden of clear and convincing evidence for establishing Ex-husband's wilful failure to pay child support and child related expenses and found him "guilty of contempt of court." The trial court sentenced Ex-husband to six months in the Tulsa County jail, assessed $500 in fines plus costs, revoked all his licenses, set a purge fee total in the amount of $20,171.36, and reserved Ex-wife's application for attorney fees.

¶ 6 The Contempt Order filed April 2, 2009 includes the court's findings and also finds Ex-husband "is not in compliance and … [is] guilty of indirect contempt of Court," ordering the payments of fines and purge fee by "cash only," and that "[t]he fee is payable to DHS."[2] The purge fee is itemized in the order, as follows:

| | | |
|---|---|---|
| 1. | January and February 2009 child support | $ 695.48 |
| 2. | Unpaid extracurricular activities | $ 1,324.30 |
| 3. | Unpaid Medical Expenses | $ 788.60 |
| 4. | Unpaid Childcare | $ 5,928.81 |
| 5. | Remaining Monies due on Decree Judgment | $ 2,829.33 |
| 6. | DHS Modifications for Medical & Childcare | $ 1,796.63 |
| 7. | DHS Claim | $ 6,808.21 |
| | Totaling | $20,171.36 |

The Contempt Order also reserved the issue of Ex-wife's request for attorney fees.

¶ 7 Ex-husband timely filed his Petition-in-Error from the Contempt Order. After the trial court entered its Order Awarding Attorney Fees in favor of Ex-wife in the amount of $14,328.85, Ex-husband amended his petition to include review of that post-judgment order.[3]

---

1. In paragraph 18 of the 11/9/06 Agreed Decree, Ex-husband's agreement to pay 50% of Ex-wife's attorney fees and costs was reduced to judgment in the amount of $2,750.00, and he was ordered to pay "a minimum of fifty dollars ($50.00) per month each and every month until this judgment is paid in full."

2. No error has been raised on appeal concerning the trial court's order directing payment to DHS or its participation in this post-decree proceeding. DHS did not file an entry of appearance or move to intervene but "was represented" by counsel first at an October 2008 hearing and then at the February 27, 2009 contempt trial. Contrary to 43 O.S.Supp.2007 § 112(F), the trial court did not inquire at that trial whether any "public assistance money or medical support" has been provided by DHS, and neither the record nor the parties explain what services or public assistance if any, Ex-wife received from DHS. It appears from the record that Ex-wife received either *child support* or *enforcement* services, and therefore we presume DHS was entitled, pursuant to § 112(F), to participate in the contempt proceeding on Ex-wife's behalf, without the need to intervene.

3. Both petitions were served on DHS, who did not file an entry of appearance nor did it file an answer brief or join in Ex-wife's brief.

## ANALYSIS

¶ 8 Ex-husband alleges the trial court erred as a matter of law by finding him guilty of indirect contempt for failing to pay child support and child-related expenses (collectively, obligations) which were: (1) not included in Ex-wife's contempt application, (2) accrued subsequent to the contempt application, (3) due under a subsequently filed DHS order, and (4) due under a temporary order but not reserved in the final decree. After review of the applicable law, we address Ex-husband's last argument as "Pre-decree obligations" and his remaining arguments as "Post-decree obligations."

### Oklahoma Law Pertaining to Indirect Contempt of Court

¶ 9 Contempts are defined and limited by Oklahoma's Constitution and Statutes which have set forth a complete and all-inclusive definition of contempts. *In the Matter of J.H.*, 2008 OK 104, ¶ 8, 213 P.3d 545,· 547. Since 1910, an indirect contempt of court has been defined under § 565 of Title 21 as "willful disobedience of any process or order lawfully issued or made by court." Effective November 1, 2008, the Legislature enacted a new statute, 21 O.S.Supp.2008 § 566.1, which applies to indirect contempt of a court "order compelling a parent to furnish child support, necessary food, clothing, shelter, medical support, payment of child care expenses or other remedial care for the minor child of the parent."

¶ 10 Section 566.1 includes four subsections: [1] the "prima facie evidence of an indirect civil contempt of court,"[4] § 566.1(A); [2] the punishments for "indirect contempt for the failure to comply with an order for child support, child support arrearages, or other support," § 566.1(B); [3] alternative programs/payment plan, *see* § 566.1(C); and [4] specific factors mandated for use by courts in determining a sentence and purge fee for indirect contempt, *see* § 566.1(D).[5]

■ ¶ 11 Unlike direct contempt, the procedure governing punishment for indirect contempt is quite detailed and offers more protection to the accused. *J.H.*, ¶ 12. Proceedings for contempt are *sui generis.* *Henry v. Schmidt*, 2004 OK 34, ¶ 11, 91 P.3d 651, 654. The purpose of the punishment for indirect contempt is remedial if used to coerce the defendant to comply with a court order. *Id.*, ¶ 13. In cases of indirect contempt for "failure to comply with an order for child support, child support arrears, or other support," the option to purge is "statutorily required" *Id.*

### Pre-decree Obligations

¶ 12 Ex-husband alleges the trial court erred by finding him guilty of indirect contempt for obligations due under temporary orders, arguing the 11/9/06 Agreed Decree failed to state such obligations were "still due" and expressly provided that it "supercedes all prior Orders entered by the Court herein."[6] Relying on *Holleyman v. Holleyman*, 2003 OK 48, 78 P.3d 921, he basically argued the trial court was bound by the "superceding" provision in consent decree.

¶ 13 Ex-husband made these same arguments at the contempt trial when objecting to admission of Ex-wife's Exhibit No. 1, the two-page "DHS Record of Payment" executed on "2–24–09,"[7] which lists Ex-husband's varying monthly child support obligations and the payments he made pursuant to two "temporary order agreements" dated "4/3/06

---

4. The required "proof" was originally enacted in 1990 as part of another Title 21 statute, *see* 21 O.S.Supp.1990 § 566(B)(2), and in 2008, transferred without modification to § 566.1(A).

5. These same factors were originally enacted in 1989 in another Title 21 statute, *see* 21 O.S.Supp. 1989 § 566(B)(1), and in 2008, transferred to § 566.1(D).

6. We do not address Ex-husband's third appellate argument based on ¶ 26 of the Agreed Decree of Dissolution, in which the parties war-

ranted, to each other and the court, that a full disclosure of the existence and value of all property and debts owed jointly or separately by the parties had been made and the division of the property and debts is based upon such disclosure and warranty. Ex-husband did not make this specific argument to the trial court.

7. Ex–Wife's Exhibit No. 1 states that it is "based on the official records of the Oklahoma Centralized Support Registry."

and 5/3/06," the 11/9/06 Agreed Decree, and a 01/22/09 Order Modifying Child Support.

¶ 14 In response to Ex-husband's objections, counsel for DHS conceded the 11/9/06 Agreed Decree "is silent as to any amounts that were due under the temporary order," but argued that such omission does not bar collection of such amounts, relying on "43 O.S. § 118I(B)(2)." Apparently agreeing with DHS, the trial court admitted Exhibit 1 and noted Ex-husband's objection. After Ex-husband's closing argument, DHS further argued the temporary orders were still valid and enforceable by contempt and the word "supercedes" in the final decree means it "takes the place of ... *It doesn't mean it vacated or in any way affected those prior orders.*" (Emphasis added.)

¶ 15 Ex-wife does not address the "superseding" provision in the 11/9/06 Agreed Decree in her Answer Brief, but argues, as DHS did below, that "the Modified Temporary Order and Divorce Decree were valid orders and the provisions thereof were enforceable by a contempt action." She also relies on 43 O.S.Supp.2009 § 118I(B)(2),[8] which provides that "[a]ll final orders *shall state* whether past due support and interest have accrued pursuant to any temporary order and the amount due, if any; *however,* failure to state a past-due amount *shall not bar collection* of that amount after entry of the final support order." (Emphasis added.)

¶ 16 We first note § 118I(B)(2) did not go into effect until July 1, 2009, four months after the contempt trial, however, its inclusion in § 118I resulted from the Legislature's transfer of a subsection from a different statute, 43 O.S.Supp.2007 § 118(E)(16)(b)(2),[9] *without* modification to the language. Because the latter was in effect on the date of trial *and* when the contempt application was filed, we will refer to § 118(E)(16)(b)(2) when considering the trial court's decision to allow collection of accrued and unpaid child support due under its temporary orders by indirect contempt

proceedings after approval of the parties' 11/9/06 Agreed Decree.

¶ 17 Statutory interpretation presents a question of law. *Fanning v. Brown,* 2004 OK 7, 85 P.3d 841. The fundamental rule of statutory construction is to ascertain and give effect to the legislative intent, and that intent is first sought in the language of a statute. *Id.* In the absence of a statutory definition, this court will give the words of a statute a plain and ordinary meaning, unless a contrary intention plainly appears. *Id.* When the language of a statute is plain and unambiguous, no occasion exists for application of rules of construction, and the statute will be accorded meaning as expressed by the language employed. *City of Durant v. Cicio,* 2002 OK 52, 50 P.3d 218. We must consider the statute as a whole, not just individual provisions. *Harrison v. Morgan,* 2008 OK CIV APP 68, ¶ 14, 191 P.3d 617, 621.

¶ 18 Different statutes on the same subject are generally to be viewed as *in pari materia* and must be construed as a harmonious whole. *Taylor v. State Farm Fire and Casualty Company,* 1999 OK 44, ¶ 19, 981 P.2d 1253, 1261. All legislative enactments *in pari materia* are to be interpreted together as forming a single body of law that will fit into a coherent symmetry of legislation. *Id.* Under the rule of *in pari materia,* the Legislature is not presumed, in enacting a new statute, to have intended to repeal by implication an earlier statute. *Strong v. Laubach,* 2004 OK 21, 89 P.3d 1066.

¶ 19 We first note that the term "collection" is not specifically defined in Title 43 or in § 118, and our research reveals no published Oklahoma cases interpreting the statutory language at issue since its addition to § 118 in 1999.[10] According to *Webster's Third New International Dictionary* (1986 Edition) p. 444, "collection" means "the act of collecting," and "collect" means "to claim and receive payment or fair recompense" and "to present as due and receive payment for."

---

8. See footnote 2.

9. DHS recognized § 118I was not operative on the date of trial, because during closing, it also cited to "§ 118(16)(B)(2)," apparently intending "§ 118(E)(16)(B)(2)."

10. *See* 43 O.S.Supp.1999 § 118(C)(15)(b)(2).

The latter term also appears in another statute, 43 O.S.2001 § 137.

¶20 As relevant here, § 137(A)(1), which had its origin as 12 O.S.Supp.1987 § 1291, still provides:

A. *Any payment or installment of child support* ordered pursuant to *any order*, judgment, or decree of the district court ... is, on or after the date it becomes past due, a judgment by operation of law. Judgments for past due support *shall:*

(1) have the full force and effect of any other judgment of this state, *including the ability to be enforced by any method available under the laws of this state to enforce and **collect** money judgments*." (Emphasis added.)

Also since 1987, § 137(B)(2) has provided "[a]n order that provides for payment of child support, if willfully disobeyed, may be enforced by *indirect civil contempt proceedings,* notwithstanding that the support payment is a judgment on and after the date it becomes past due." (Emphasis added.) Other "means of enforcement" or "methods of collection" which were originally included in the 1994 version of § 137 but deleted by the Legislature in 1996, *i.e.,* income or wage assignment, court-ordered periodic payments, tax refund interruption, are still available "collection mechanisms" for past due child support. *State ex rel. Department of Human Services v. Tarrant,* 2006 OK CIV APP 2, ¶¶13–14, 129 P.3d 173, 175. Considering together § 137 *and* § 118(E)(16)(b)(2), the latter statute's purpose is to preserve for *post-decree collection* every child support payment due by a temporary order which becomes a judgment by operation of § 137(A) when past due, *despite* omission of the amount of past due child support and interest from the final decree.

¶21 Acceptance of the trial court's interpretation of § 118(E)(16)(b)(2) would force this court to ignore, not only the

superceding provision in the 11/9/06 Agreed Decree, but also a statute specifically addressing temporary orders *and* indirect contempt proceedings, 43 O.S.Supp.2003 § 110(C). This section provides:

Any temporary orders and the automatic temporary injunction, or specific terms thereof, may be vacated or modified prior to or in conjunction with a final decree on a showing by either party of facts necessary for vacation or modification." *Temporary orders* and the automatic temporary injunction *terminate when the final judgment on all issues,* except attorney fees and costs, *is rendered or when the action is dismissed.* The court *may reserve jurisdiction to rule* on an application for a contempt citation for a violation of a temporary order or the automatic temporary injunction *which is filed any time prior to the time the temporary order or injunction terminates.*" (Emphasis added.)

¶22 We find no published Oklahoma cases interpreting, in the context of indirect contempt, § 110(C)'s second and third sentences.[11] To determine the Legislature's intent, we begin with the plain and common definition of "terminate" in the second sentence, meaning "to come to an end in time; cease to be." *Webster's Third New International Dictionary* (1986 Edition), p. 2359. "In Oklahoma, judgment is rendered when pronounced." *Pellow v. Pellow,* 1985 OK 88, ¶10, 714 P.2d 593, 595. Contrary to Ex-wife's position, § 110(C)'s second sentence clearly and unambiguously mandates that temporary orders cease to exist when the final decree is pronounced or the action is dismissed, which we conclude is a clear indication of the Legislature's recognition of the longstanding rule that "a final decree supersedes any temporary or interlocutory order rendered during the suit's pendency." *Lincoln Bank and Trust Co. v. Oklahoma Tax Commission,* 1992 OK 22, ¶5, 827 P.2d 1314,

---

**11.** The Court in *Gray v. Gray,* 1996 OK 84, ¶18, 922 P.2d 615, 621, interpreted the first two sentences of § 110(C)'s predecessor, 43 O.S.Supp. 1992 § 110(B), which then allowed temporary orders to be vacated or modified "before final decree." When deciding if the trial court had abused its discretion by retroactively modifying a temporary support order at trial, the Court held, "[p]ursuant to this statute, a trial court may modify a temporary order in conjunction with the issuance of a final decree. It is only *after the final decree* has been entered that *a court loses authority* to *modify* a temporary order." (Emphasis in original.)

1317.[12] This general rule has been applied to temporary orders in marital dissolution proceedings prior to the Legislature's enactment of § 110(C)'s predecessor, 43 O.S. Supp.1992 § 110(B). *See Gray v. Gray*, 1996 OK 84, 922 P.2d 615.[13] Further, the "superceding" provision in the parties' Agreed Decree is essentially an express contractual application of § 110(C)'s second sentence.

¶ 23 Section 110(C)'s third sentence essentially acts like a proviso or exception to the temporary order termination rule. Limitation of a legislative act drafted in general terms may be achieved by a proviso, an exception, or through the use of a "case" or "condition," the latter of which narrows the range of situations or circumstances subject to the rule of the act. Sutherland Statutory Construction, §§ 20.22 and 21.06 (5th Ed.). Although the third sentence does not begin with the typical words introducing a statutory exception or proviso, its clear and unambiguous language removes or excepts a specific condition from application of the general rule set forth in the second sentence. By allowing the trial court to reserve or retain jurisdiction over a temporary order after the final decree is rendered *only if* an application for contempt citation alleging a violation of such order has been filed *prior to* the termination of the temporary order, § 110(C)'s third sentence, as written, unmistakably mandates that a trial court has no authority to decide whether a party is guilty of indirect contempt for violating a temporary order *in the absence of* compliance with this specific requirement. The obvious consequence for such failure is elimination of a *post-decree* proceeding for indirect contempt as a method to collect past due amounts of support and interest as provided by § 118(E)(16)(B)(2).

¶ 24 In this post-decree contempt proceeding, the final judgment was rendered or pronounced when the trial court approved the parties' Agreed Decree. However, there is no indication in the record that Ex-wife filed an application for a contempt citation for Ex-husband's alleged violation of the temporary orders *prior* to court approval of their decree. Therefore, we conclude the trial court lacked jurisdiction to rule on Ex-wife's 5/19/08 Contempt Application *as to* any child support or other child-related expenses due under the temporary orders in the dissolution proceedings.

¶ 25 Review of the first page of Ex-wife's Exhibit No. 1 confirms Ex-husband's position that the pre-decree child support obligation shown therein, $5,525.72,[14] constitutes the *majority* of the total child support Ex-wife alleged in her Contempt Application was unpaid through February 2008, *i.e.*, $6,493.54 (with interest). The exhibit further confirms the latter amount had increased through February 2009 to $6,808.21, the amount the trial court designated in the purge fee as the

**12.** *Lincoln Bank and Trust Co.* cites in footnote 12 of that opinion several cases as authority for this holding, including *Kuchler v. Weaver*, 1909 OK 55, 100 P. 915, and *Johnson v. Johnson*, 1983 OK 117, 674 P.2d 539, a marital dissolution case also discussed in *Gray v. Gray*, 1996 OK 84, 922 P.2d 615.

**13.** Because § 110(B) did not specify if temporary orders could be modified at trial, the *Gray* Court relied on the following quote from *Johnson v. Johnson*, 1983 OK 117, 674 P.2d 539:

Obligations created by interlocutory orders pendente lite *do not survive*, but merge in, the final judgment. Unlike accrued unpaid installments under a decree or some final order, an arrearage due under the terms of an interlocutory order may be modified or extinguished retroactively.... In short, the divorce decree operate[s] effectively *to extinguish* all pre-existing rights of the parties arising out of their former marital status. (Emphasis added.) *Gray*, ¶ 18.

*Johnson* involved a post-decree motion seeking judgment for an arrearage due under a temporary support alimony order.

**14.** "Pre-decree" in Ex-wife's Exhibit No. 1 covers April 6, 2006 through November 6, 2006. This amount does not include interest or the uncontroverted $822.92 credit shown in Exhibit No. 1 for Ex-husband's pre-decree child support payments. Ex-wife did however deny Ex-husband's testimony that the $6,553.53 "pre-decree" checks she received from him between their separation and the final decree were for child support. She testified the checks, which had no notations of their purpose, were for other expenses she had paid on his behalf during their separation. Due to our decision concerning the pre-decree obligations, we do not address Ex-husband's allegation that the trial court erred by classifying the pre-decree payments as "gifts" and not giving him any credit.

"DHS claim."[15] The same exhibit also confirms that the total pre-decree child support obligation arose from two temporary orders entered in the dissolution proceeding, over which trial court jurisdiction was not reserved pursuant to § 110(C).

¶ 26 Ex-husband argues Ex-wife's other exhibits also erroneously included pre-decree obligations. Our review of her exhibits reveals only one. Ex-wife's Exhibit No. 5, child care expenses of $5,928.81, has in its "Date Incurred" column three entries marked as only "2006". Ex-husband's 2006 share would be $3,720.00. However, the exact amount of *pre-decree* child care obligation is not ascertainable from Ex-wife's exhibit because there are no payment receipts and two of the three attached invoices for 2006 lack adequate "Date Incurred" information.[16]

¶ 27 Ex-wife's Exhibit No. 1 and Exhibit No. 3 erroneously include pre-decree obligations over which the trial court had no jurisdiction because of Ex-wife's failure to file an application for contempt citation alleging violation of the temporary orders prior to the court's approval of the Agreed Decree. Such legal error must be reversed.

### Post-decree Obligations

¶ 28 Ex-husband further argues the trial court's purge fee erroneously included amounts of obligations that were either not alleged in Ex-wife's Contempt Application or were ordered to be paid by a subsequent valid and enforceable order. Pointing out the increase between the total debt Ex-wife claimed in her Contempt Application, $14,175.94, and the trial court's $20,171.36 total purge fee, Ex-husband further argues the amount of each obligation alleged in her Contempt Application that became due and owing after the application was filed should not have been included in the purge fee. We agree with both arguments.

¶ 29 Title 21 O.S.2001 § 567 requires "the party charged with contempt shall be notified in writing of the accusation and have a reasonable time for defense." Due process requires that an individual charged with indirect contempt be given full and complete notification and a reasonable opportunity to meet the charges. 17 C.J.S. Contempt, § 78. A trial court is without power or authority to hold a defendant guilty for indirect contempt based upon an accusation that was not included in an application for a contempt citation. *Nuckolls v. Nuckolls,* 1960 OK 224, ¶ 11, 356 P.2d 1089, 1092; *Green v. Green,* 1962 OK 157, ¶ 4, 373 P.2d 15, 16 (citing *Townsend v. Townsend,* 1935 OK 1001, 50 P.2d 147). A judgment will not be reversed due to alleged defects or omission in a petition for citation for indirect contempt *if* the defects or omissions are supplied by the proof *without* objection. *Van Horn v. Van Horn,* 1943 OK 302, ¶ 2, 141 P.2d 1006, 1007.

¶ 30 In this case, Ex-wife's Contempt Application against Ex-husband was based solely on his failure to comply with the 11/9/06 Agreed Decree. She did not amend that application prior to trial but submitted Exhibits No. 3 through 5,[17] each of which includes obligations which either accrued or which were not incurred until after the filing of the Contempt Application. Ex-wife also submitted Exhibit No. 6, a DHS administrative order filed January 22, 2009, by which the amount of Ex-husband's child support payments and his percentage of health care and child care expenses were increased, and Exhibit No. 7, Garnishment Information.

¶ 31 Despite Ex-husband's objections to the above exhibits on the same grounds, he argues on appeal Ex-wife never moved to amend her pending contempt application to conform to the proof presented at trial, as allowed by 12 O.S.2001 § 2015(B). More importantly, when Ex-husband objected to Ex-wife's Exhibit No. 2, a summary of the

---

15. In Proposition VI, Ex-husband contends the "DHS claim" and other amounts included in the purge fee "were not specifically set forth in [Ex-wife's Contempt Application]." Based on our review of the record, we disagree.

16. Over Ex-husband's objections, including lack of payment receipts, the trial court admitted that exhibit and accepted the stated arrearage amount in its entirety.

17. Details of these were given in our discussion entitled "Pre-decree obligations."

obligations set forth in Exhibits No. 3 through 7, upon the ground that it included obligations subsequent to the filing of the contempt application, Ex-wife's counsel responded that he has a continuing obligation to pay. The trial court *upheld* Ex-husband's objection, stating "[t]he subsequent matters are not subject to this contempt application unless it's requested in the application."

¶ 32 The trial court erred, as a matter of law, by including in the total purge fee (1) arrearage amounts in excess of the amounts Ex-wife originally claimed in her 5/19/08 Contempt Application, and (2) obligations which arose by a valid and enforceable order rendered subsequent to the 11/9/06 Agreed Decree. Our conclusion on this issue, however, does not effect expense obligations incurred *between* the 11/9/06 Agreed Decree and the 05/19/08 Contempt Application, either or both of which post-decree obligations could support the trial court's finding of indirect contempt following remand.

### CONCLUSION

¶ 33 Pursuant to 43 O.S.2001 § 110(C), the trial court lacked jurisdiction over the temporary orders upon which Ex-wife's indirect contempt proceeding was in part based due to her failure to file an application of contempt citation alleging violations of the temporary orders prior to the court's approval of the 11/9/06 Agreed Decree. As a result, the trial court erred by considering Ex-husband's failure to pay according to those temporary orders in finding him guilty of indirect contempt and including any pre-decree obligations in the purge fee. However, in light of 43 O.S.2001 § 137, we clarify this holding simply eliminates collection of pre-decree obligations by a post-decree proceeding for indirect contempt *when* jurisdiction of the temporary orders has not been reserved pursuant to § 110(C). This holding should not be construed to preclude collection of the pre-decree obligations *by any other legal collection method.*

¶ 34 This legal error alone affects the two largest obligations claimed by Ex-wife, deduction of which pre-decree amounts substantially decreases the trial court's total purge fee and further impacts several of the factors trial courts are required to use in determining a sentence and purge fee pursuant to 21 O.S.Supp.2008 § 566.1(D). The trial court's erroneous inclusion of the aforementioned post-decree obligations similarly impacts the total purge fee.

¶ 35 For these reasons and the trial court's express reliance on Ex-wife's Exhibit No. 1 in finding Ex-husband guilty of indirect contempt, we reverse the contempt order and remand with instructions to reconsider the contempt citation in reference to compliance or noncompliance with the 11/9/06 Agreed Decree as to the balance of obligations due after that date and prior to the 5/19/08 Contempt Application and in light of both § 566.1(D)'s sentencing and purge fee factors and Rule 8.3, Rules for the District Courts of Oklahoma, 12 O.S.1991, ch.2, App.

**REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

BUETTNER, P.J., concurs in result, and HANSEN, J., concurs.